**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 25-154                                   Caption [use short title]

Motion for: Permission to file oversized brief

_____

_____

Set forth below precise, complete statement of relief sought:

Extend the word limit from 3,900 to 5,200 words

_____          # United States v. Bush (Pippins)

_____

_____

_____

_____

MOVING PARTY: Marvin Pippins                    OPPOSING PARTY: United States

☐ Plaintiff          ☐ Defendant

☑ Appellant/Petitioner     ☐ Appellee/Respondent

MOVING ATTORNEY: Richard Ware Levitt          OPPOSING ATTORNEY: Lindsey Oken

[name of attorney, with firm, address, phone number and e-mail]

Levitt & Kaizer                              U.S. Attorney's Office, E.D.N.Y.

40 Fulton St., Ste 1702 New York, NY 10038     271 Cadman Plaza E Brooklyn, NY 11201

212-480-4000; rlevitt@landklaw.com           718-254-6516; Lindsey.Oken@usdoj.gov

Court- Judge/ Agency appealed from: EDNY; Hon. Pamela K. Chen

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☑ No  ☐ Don't Know

Is oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No  If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

_____
_____
_____
_____

**Signature of Moving Attorney:**

/s/ _____  Date: 02/13/2026   Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                        Docket No. 25-154(cr)

     *Appellee*,

        v.                          **AFFIRMATION IN
SUPPORT OF
BUSH (PIPPINS),**                    **MOTION TO FILE
OVERSIZED BRIEF**

     *Defendant-Appellant.*
-----------------------------------------------------------X

Richard Levitt, affirms the following under penalty of perjury:

1. I was appointed to represent Marvin Pippins in his direct appeal from his conviction in the Eastern District of New York, before the Hon. Pamela K. Chen and a jury, of murder and other offenses, and sentence of life imprisonment.

2. On February 3, 2026, a panel of this Court (Parker, Robinson, Carney) affirmed the conviction via summary order. *See United States v. Pippins*, No. 25-154, 2026 WL 277682, at *2 (2d Cir. Feb. 3, 2026).

3. I submit this affirmation in support of our motion to file an oversized petition for rehearing/en banc.

4. Due the size length of the transcript and complex fact pattern, the Panel granted the parties' requests to file 25,000 word appellate briefs. *See* Dkt. 24 (granting Appellant's motion); Dkt. 35 (Appellee's motion).

5. Although the proposed petition for rehearing/rehearing en banc seeks leave to consider all six issues raised in Appellant's brief, the petition only focuses on two issues.

6. I along with my partner have endeavored to keep the brief as short as possible consistent with our obligation to our client and to the Court to fully and clearly set forth the relevant facts, law, and arguments.

7. Federal Rule of Appellate Procedure 40(d)(3)(A) limits petitions to 3,900 words and our proposed brief (due to be filed March 20, 2026) is approximately 5,127 words. *See* Exhibit A, Proposed Brief.

8. I believe that further editing would severely compromise both the clarity and the thoroughness of the brief.

9. The government does not oppose this request.

2

WHEREFORE, I respectfully request leave to file the attached oversized Appellant's brief on behalf of Mr. Pippins of no more than 5,200 words.

Dated: New York, New York
     February 13, 2026

Respectfully submitted,

_____
Richard W. Levitt
Levitt & Kaizer
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 480-4000
rlevitt@landklaw.com
*Attorneys for Marvin Pippins*

3

*MOTION INFORMATION FORM*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

      *Appellee,*

      v.                            DOCKET NO. 25-154(cr)

BUSH (PIPPINS),

      *Defendant-Appellant.*

Richard Levitt
Levitt & Kaizer
Attorneys at Law
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 480-4000
*Attorney for Marvin Pippins*

# Exhibit A

# Proposed Brief

# 25-154 (cr)

## United States Court of Appeals
### For the Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JEFFREY BUSH, TYSHAWN ATKINS a/k/a "Breeze," INDIA LANE a/k/a "Gorgeous Gangsta," LOUIS LOVE a/k/a "Scoobz" a/k/a "Scoobie," YONETTE RESPASS a/k/a "Yonette Pespass" a/k/a Yonette Davis" a/k/a "Star Brim," JAMES SEASE a/k/a "Chop Whop," MONTEL SHUEMAKE a/k/a "Buzzo," RUDOLFO ZAMBRANO a/k/a "Latinn Dinero," JOSE BATTLE a/k/a "Strizz," NASIA BATTLE a/k/a "Nas," BRIAN JACKSON a/k/a "Maxx Millii" a/k/a "Grape,"

*Defendants,*

MARVIN PIPPINS a/k/a "Mukk,"

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**PETITION FOR REHEARING WITH SUGGESTION
FOR REHEARING EN BANC ON BEHALF OF
DEFENDANT-APPELLANT MARVIN PIPPINS a/k/a "Mukk"**

Richard W. Levitt
Zachary Segal
Levitt & Kaizer
40 Fulton Street 17th Floor
New York, New York 10038
(212) 480-4000
*Attorneys for Marvin Pippins*

February 13, 2026

## Table of Contents

Table of Authorities .......................................................................iii

I. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON PIPPINS' THEORY OF DEFENSE THAT THE ENTERPRISE-RELATED MOTIVE FOR THE MURDER COUNTS HAD TO BE "SUBSTANTIAL" OR "INTEGRAL" TO HIS MEMBERSHIP IN THE 5-9 BRIMS DENIED PIPPINS A FAIR TRIAL ON COUNTS TWO, THREE AND FOUR; LIKEWISE, THE COURT'S INSTRUCTION THAT THE JURY SHOULD ACQUIT ONLY IF IT FOUND PIPPINS HAD NO ENTERPRISE-RELATED MOTIVE AT ALL WAS ERROR. ...........3

A. Facts.....................................................................................3

B. The Panel Decision ...............................................................7

C. Discussion ...........................................................................7

    1. The motive element of § 1959(a)(1) is satisfied only if the defendant's gang association was a "substantial motivating factor" for the charged murder or if the murder was committed as an "integral aspect" of his gang membership. ......................................................................7

    2. The Panel decision is deeply flawed.....................................10

    3. The panel's alternative finding of harmless error is unsupported and unsupportable .........................................12

    4. In addition to being erroneous, the district court's instruction failed to incorporate, as was Pippins' right, his accurate theory of defense instruction. ..........................12

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INTERRUPTED DEFENDANT'S CLOSING ARGUMENT AND REQUIRED HIM TO DELETE ALL HIS POWERPOINT SLIDES THAT ARGUED THE GOVERNMENT INVENTED THE PHRASE "5-9 BRIMS OF MARLBORO" IN A "SNEAKY" EFFORT TO "TRAIN" THE JURY TO MAKE AN UNSUPPORTABLE ASSOCIATION BETWEEN THE CHARGED ENTERPRISE – THE "5-9 BRIMS" – AND THE BREADGANG, WHICH WAS NOT NAMED IN THE INDICTMENT ..................................................................14

A. Facts .......................................................................14

B. The Panel Decision ...............................................18

C. Discussion .............................................................18

Conclusion ......................................................................23

# Table of Authorities

**Cases**      **Page(s)**

*Davis v. Napel*, No. 2:14-cv-10019 (E.D. Mich. Feb. 29, 2016) ...............19

*Robertson v. Simpson*, No. 5:05CV-239-R, 2011 WL 3880940
(W.D. Ky. Sept. 2, 2011) ........................................................................20, 22

*Rodriguez v. Morris*, No. CV-19-04957-PHX-GMS (D. Ariz.
May 17, 2021) .............................................................................................18

*Slagle v. Bagley*, 457 F.3d 501 (6th Cir. 2006) .......................................20

*United States v. Arrington*, 941 F.3d 24 (2d Cir. 2019) ..........................13

*United States v. August*, 984 F.2d 705 (6th Cir. 1992) ...........................19

*United States v. Caputo*, 808 F.2d 963 (2d Cir. 1987) ............................20

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992)....................7, 8

*United States v. Dencklau*, 160 F.4th 1046 (9th Cir. 2025)....................10

*United States v. Dove*, 916 F.2d 41 (2d Cir. 1990).................................13

*United States v. Fiel*, 35 F.3d 997 (4th Cir.1994) ..................................10

*United States v. Fox*, 761 F. App'x 765 (9th Cir. 2019) .........................19

*United States v. Hackett*, 762 F.3d 493 (6th Cir. 2014) .........................10

*United States v. Heilman*, 377 F. App'x 157 (3d Cir. 2010)....................10

*United States v. Jones*, 291 F. Supp. 2d 78 (D. Conn. 2003) ....................8

*United States v. Kamahele*, 748 F.3d 984 (10th Cir. 2014) ....................10

*United States v. Marrale*, 695 F.2d 658 (2d Cir. 1982)..........................21

*United States v. McClaren*, 13 F.4th 386 (5th Cir. 2021) .......................10

iii

*United States v. Pippins*, No. 25-154, 2026 WL 277682 (2d
 Cir. Feb. 3, 2026) ....................................................................1, 7, 18

*United States v. Praetorius*, 622 F.2d 1054 (2d Cir. 1979) .....................20

*United States v. Rainford*, 110 F.4th 455 (2d Cir. 2024) ........................19

*United States v. Robertson*, 736 F.3d 1317 (11th Cir. 2013) ..................10

*United States v. Rowland*, 826 F.3d 100 (2d Cir. 2016) ...................12, 13

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) .....................18, 19

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) ...................................8

*United States v. White*, 7 F.4th 90 (2d Cir. 2021) ..............................9, 13

*United States v. Young*, 470 U.S. 1 (1985).......................................18, 21

**Statutes and Other Authorities**

18 U.S.C. § 1959........................................................................1, 7, 9

## PETITION FOR REHEARING WITH SUGGESTION FOR REHEARING EN BANC

"If we are to keep our democracy, there must be one commandment: Thou shalt not ration justice."

Learned Hand, speaking at the Legal Aid Society of New York's 75th anniversary celebration in 1951.

Marvin Pippins respectfully seeks rehearing, with suggestion for rehearing en banc, from the February 3, 2026, Summary Order of a panel of this Court (Parker, Robinson, Carney, CJs), affirming his conviction and sentence for murder in aid of racketeering (18 U.S.C. § 1959(a)) and related offenses. *See United States v. Pippins*, No. 25-154, 2026 WL 277682, at *2 (2d Cir. Feb. 3, 2026).

Pippins was convicted, *inter alia*, of murder in aid of racketeering (18 U.S.C. § 1959(a)(1)), for having killed Sean Peart, a member and "enforcer" of the "Real Ryte" gang. Pippins, who was associated with both the "5-9 Brims" — the enterprise named in the indictment — and the "Breadgang" — a gang founded by his twin brother Melly but not mentioned in the indictment — testified he killed Peart because he believed Peart was responsible for murdering Melly. The government

1

alleged that Pippins killed Peart at least in part to maintain or increase his position in the 5-9 Brims, as was required to establish § 1959 liability.

We seek rehearing with respect to the six issues we raised on appeal, but in this Petition we focus on two. The first issue concerns (1) the trial court's refusal to give a theory-of-defense instruction, and (2) its giving an erroneous instruction, regarding the connection the jury was required to find between the murder and Pippins' association with the 5-9 Brims. The second issue concerns the trial court's ruling that defense counsel was prohibited from criticizing the government, and its requirement that defense counsel take a lengthy break amidst his summation to purge his slides and argument of any such criticism. Both issues have arisen repeatedly in this Court and will most certainly be raised in the future, and this Court's guidance therefore is necessary to assure consistency and fairness, both in this case and in future cases.

**I. THE COURT'S FAILURE TO INSTRUCT THE JURY ON PIPPINS' THEORY OF DEFENSE THAT THE ENTERPRISE-RELATED MOTIVE FOR THE MURDER COUNTS HAD TO BE "SUBSTANTIAL" OR "INTEGRAL" TO HIS MEMBERSHIP IN THE 5-9 BRIMS DENIED PIPPINS A FAIR TRIAL ON COUNTS TWO, THREE AND FOUR; LIKEWISE, THE COURT'S INSTRUCTION THAT THE JURY SHOULD ACQUIT ONLY IF IT FOUND PIPPINS HAD NO ENTERPRISE-RELATED MOTIVE AT ALL WAS ERROR.**

A. <u>Facts</u>.

Because the 5-9 Brims was the enterprise named in the indictment, the government was obliged to prove that Pippins killed Sean Peart to maintain or increase his position in the 5-9 Brims. Pippins testified that his decision to kill Peart was entirely personal and unrelated to any association he had with the 5-9 Brims, and he argued both at trial and on appeal that there was <u>no</u> evidence supporting the contrary conclusion.

Pippins' testimony that the murder was personal was corroborated by the testimony of both cooperating witnesses. (Tr. 521, Laborde: explaining Pippins "had an emotional breakdown and he was saying things like miss my brother, he had to go, I had to do it."); (Tr. 1005, Watson: Pippins said, "They took my baby boy" – *i.e.,* Melly – adding, while making a gun gesture, "I did boy dirty for that, I did boy dirty for that.") But assuming *arguendo* there was such evidence, there undeniably was, at the least, substantial evidence to the contrary.

3

In particular, principal government cooperator Marcus Laborde, who had been the 5-9 Brims "godfather," testified that Pippins **had no loyalty at all to the 5-9 Brims** (Tr. 734). Pippins followed none of 5-9 Brims' rules, didn't take orders from the leadership, didn't attend meetings, didn't "kick up" to the leadership, and didn't contribute money to incarcerated members (Tr. 651-53). Further, there was no evidence Pippins told anyone in the gang that he intended to kill Peart before he did so, and sought no advantage within the gang for having done so. Further, when Pippins — a rapper — wrote and rapped about the killing he did so in purely personal terms, never suggesting he was motivated to do so by his association with the 5-9 Brims. (Tr. 1650-51); (Tr. 523-24: "When they took my brother, ain't nobody try into step up" and "I wouldn't be a man if I ain't ever step up").

Given this evidence, Pippins asked the court to instruct the jury that the government was required to prove that Pippins' gang-related motivation to kill Peart was "substantial," or one "integral" to Pippins' association with the 5-9 Brims. (Tr. 1826). Otherwise, he said, the jury could find the motive element satisfied even if his gang-related motive was "a 10th of 1 percent of Mr. Pippins' motive … It could be miniscule.

4

It could be … vanishingly small." (Tr. 1819) This request, said counsel, was supported by both the legislative history of section 1959 and by abundant case law within and without this Circuit. (Tr. 1818).

The district court, acknowledging that the language quoted above had been used in the case law, opined that the proper instruction was subject to "reasonable debate" (Tr. 1826), but refused to give the requested instruction, fearful that it might result in acquittal. Specifically, the court said it was concerned "there's a possibility that a jury might find that it [*i.e.*, the 5-9 Brims] was a motive but maybe not the substantial motivating factor" and therefore acquit Pippins (Tr. 1821), and that "if the law allows the government to win its case that way [*i.e.*, by refusing to give the requested instruction], I think that that's how I should instruct them, so as not to essentially put my finger on the scale in terms of the jury's verdict." *Id.* The court instructed the jury consistent with its draft instructions (Tr.2125-26), telling the jury Pippins could avoid conviction if he "**was not motivated at all**," by his association with the 5-9 Brims:

> The fifth element requires the government to prove beyond a reasonable doubt that the defendant's general purpose in committing the crime of violence was to gain entrance to or maintain or increase his position in the enterprise. The

5

government is not required to prove that it was the defendant's sole or principal motive. You need only find that it was one of his purposes.

In determining whether a defendant's purpose in committing the crime of violence was to maintain or increase his position in the enterprise, you should give the words "maintain" and "increase" their ordinary meanings. You should consider all of facts and circumstances in making that determination. In deciding what the defendant's purpose was in committing a particular act, you must determine what he had in mind. Since one cannot look into a person's mind, you should consider all the facts and circumstances before you in making that determination. For example, you may consider what, if any, association with, or position in the enterprise the defendant had at the time the alleged murder was committed, and the extent, if at all, the commission of the alleged crime served to help the defendant gain entrance to or maintain, uphold or enhance his position within, the enterprise. If the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise, or if he committed the crime because he thought it would enhance his position or prestige within the enterprise, or if he committed it because he thought it was necessary or advantageous to maintain the position he already had, this element would be established. These are merely examples of purposes that satisfy this element, and they are not meant to be exhaustive.

This element is therefore established if the defendant had a personal motive for committing the act of violence so long as he was also motivated by the desire to gain entrance to, or maintain or increase his position in, the racketeering enterprise. **If, however, you find that the defendant was not motivated at all by the desire to gain entrance to, or maintain or increase his position in, the enterprise, but was motivated only by other factors, then you cannot find him the guilty of this count.**

Tr. 2125-26 (emphasis added).

6

## B. The Panel Decision.

The panel decision provides a brief synopsis of the district court's jury instruction without addressing whether it was deficient for not alluding to the "substantial" and "integral" language, and then concludes, in conclusory form and in the alternative, that "We doubt the instructions, when taken as a whole, allow the jury to convict Pippins on this count even if his enterprise motivation was incidental or insubstantial. But we conclude based on the trial record that any error arising from the statement that he must be acquitted if he was 'not motivated at all' by an enterprise purpose was harmless." *United States v. Pippins*, No. 25-154, 2026 WL 277682, at \*3 (2d Cir. Feb. 3, 2026).

## C. Discussion

1. **The motive element of § 1959(a)(1) is satisfied only if the defendant's gang association was a "substantial motivating factor" for the charged murder or if the murder was committed as an "integral aspect" of his gang membership.**

As early as 1992, in *United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992), this Court endorsed the "integral aspect of membership" language. Commenting on the meaning of § 1959's element requiring that the defendant act, "for the purpose of ... maintaining or increasing position in" the enterprise, it explained that the legislative history

7

contains no indication that Congress meant to require proof that self-promotion was the defendant's **only** or **primary** concern. Rather, said the court,

> the history states that this phrase was included as a means of proscribing murder and other violent crimes committed "**as an integral aspect of membership**" in such enterprises. S. Rep. No. 225, at 304, *reprinted in* 1984 USCCAN at 3483.

*United States v. Concepcion*, 983 F.2d at 381 (emphasis added).

Thus, this Court, more than 30 years ago, interpreted the legislative history of section 1959 to require the government prove that the defendant committed the crime "as an integral aspect of membership" in the enterprise. *See United States v. Jones*, 291 F. Supp. 2d 78, 88 (D. Conn. 2003) (reciting *Concepcion* holding and reversing VICAR conviction because evidence did not show murder "was an integral aspect of Jones's membership in the Enterprise.") It repeated this standard two years later in *United States v. Thai,* 29 F.3d 785, 817 (2d Cir. 1994) ("Self-promotion need not have been the defendant's only, or even his primary, concern, if it was committed '**as an integral aspect of membership**' in the enterprise.") (emphasis added).

8

More recently, in *United States v. White*, 7 F.4th 90 (2d Cir. 2021) (reversing dismissal of § 1959(a) count) the trial court had instructed the jury:

> The government does not need to prove that maintaining or increasing his position in the enterprise was the defendant's sole or principal motive, **so long as it was a substantial motivating factor** in the defendant's decision to participate in the attempted murder and/or the assault with a deadly weapon.

*Id.* at 97 (emphasis in original). On appeal, this Court found that the instruction, which included the "substantial motivating factor" language, was consistent with the statutory requirements. *Id* at 101-102 (reiterating applicable principle and concluding, "The trial court's jury instructions were consistent with this principle.").

The government has itself endorsed the "substantial motivating factor" language. See Doc. 506-1 (Reply Exhibit A to Pippins First New Trial Motion), citing *United States v. Santiago-Ortiz*, 17-cr-149, Government's Requests to Charge, Doc. 46 at 27 (S.D.N.Y. April 23, 2018) ("The Government does not need to prove that maintaining or increasing his position in the enterprise was a defendant's sole or principal motive so long as it was a **substantial motivating factor** in the defendant's decision to participate in the murder.") (emphasis added).

So, whereas this Court has said, more than once, that the "integral aspect" standard enunciated in the legislative history is a correct standard, and has said – as has the government – that the "substantial motivating factor" is also correct, it has **never** endorsed the instruction given by the court in this case.[1]

## 2. The panel decision is deeply flawed.

Rather than acknowledge that the district court's motive

---

[1]     Several other circuits have adopted this "integral aspect" or "substantial purpose" language or its equivalent. <u>Third Circuit</u>: *United States v. Heilman*, 377 F. App'x 157, 206 (3d Cir. 2010) (court holds instruction that "[i]t is sufficient if the crime of violence was committed as an integral aspect of membership in the enterprise" was "consistent with the state of the law in this area."). <u>Fourth Circuit</u>: *United States v. Fiel*, 35 F.3d 997, 1004 (4th Cir.1994) ("violent crimes committed as an integral aspect of membership in such enterprises") (internal quotation marks omitted). <u>Fifth Circuit</u>: *United States v. McClaren*, 13 F.4th 386, 406 (5th Cir. 2021) ("the statute does criminalize violent acts committed as an integral aspect of membership in a racketeering enterprise"). <u>Sixth Circuit</u>: *United States v. Hackett*, 762 F.3d 493, 500 (6th Cir. 2014) ("we conclude that VICAR's 'purpose' element is met if the jury could find that an 'animating purpose' of the defendant's action was to maintain or increase his position in the racketeering enterprise."). <u>Ninth Circuit</u>: *United States v. Dencklau*, 160 F.4th 1046, 1060, n.5 (9th Cir. 2025) (approving instruction "You need only find that enhancing his status in the Gypsy Joker Motorcycle Club was a substantial purpose of the defendant or that he committed the charged crime as an integral aspect of membership in the Gypsy Joker Motorcycle Club."). <u>Tenth Circuit</u>: *United States v. Kamahele*, 748 F.3d 984, 1013 (10th Cir. 2014) (finding no error in instruction that "the government must prove beyond a reasonable doubt that the purpose was an integral, or essential, purpose.") (emphasis in original). <u>Eleventh Circuit</u>: *United States v. Robertson*, 736 F.3d 1317, 1329 (11th Cir. 2013) ("Congress intended to criminalize violent acts committed 'as an integral aspect of membership' in a racketeering enterprise") (emphasis in original).

instruction was error, it instead concludes, "We doubt the instructions, when taken as a whole, allow the jury to convict Pippins on this count even if his enterprise motivation was incidental or insubstantial." We respectfully suggest there is no basis in the record — and the panel posits none — that would support this conclusion. On the contrary, not only did the instruction fail to inform the jury that an "incidental or insubstantial" motivation would be insufficient, but it also affirmatively told the jury that it should acquit Pippins if (and, inferentially, only if) he was "**not motivated at all**" by the gang-related motive.

The eminent district judge herself candidly acknowledged she was omitting the "substantial" and "integral" language **precisely so the jury could convict** should it find that Pippins' gang motivation was de minimis. Tr. 1821 ("I think there's a possibility that a jury might find that it was a motive but maybe not the substantial motivating factor; and if the law allows the government to win its case that way, I think that that's how I should instruct them….").

The panel's failure to acknowledge that the instruction was error therefore enjoys no support in this record.

11

3. **The panel's alternative finding of harmless error is unsupported and unsupportable.**

In the alternative, the panel concludes that, "based on the trial record … any error arising from the statement that he must be acquitted if he was 'not motivated at all' by an enterprise purpose was harmless," Again the panel provides no record support for this claim, and there is none. On the contrary, as summarized above (at pp. 3-4) there was substantial evidence, in addition to Pippins' own testimony, that he **was** **not** motivated by his gang associations to kill Sean Peart. Moreover, the district court carefully calibrated its instruction for the explicit purpose of extinguishing what it considered the very real possibility that the jury would acquit were it to give the requested instruction.

4. **In addition to being erroneous, the district court's instruction failed to incorporate, as was Pippins' right, his accurate theory of defense instruction.**

The district court's failure to instruct the jury regarding the "substantial motivating factor" or "integral aspect" language was error for the additional reason that a defendant is entitled to an instruction on "any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be," *United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016) (cleaned up), so long as the

proposed instruction is accurate. *Id; United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990) (same). Here, after hearing the government and the court's critique of Pippins' initial request, his counsel said, "I'm asking that the Court instruct either consistently with *Arrington* [*United States v. Arrington,* 941 F.3d 24, 38 (2d Cir. 2019)], the integral aspect language, or consistent with *White* [*United States v. White, 7 F.4th 90, 101–02 (2d Cir. 2021)*], the substantial motivating factor language." The court agreed "that is [] the request I am denying." (Tr. 1826).

Because counsel's requested instruction was entirely accurate and not redundant, the district court's abused its discretion in not giving it. Yet the panel overlooked this issue entirely.

Pippins was entitled to his requested theory of defense instruction. Not only did he not get it but the district court also instructed the jury erroneously, in a way calculated to defeat a viable defense. In short, he was denied a fair trial.

13

## II. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR WHEN IT INTERRUPTED DEFENDANT'S CLOSING ARGUMENT AND REQUIRED HIM TO DELETE ALL HIS POWERPOINT SLIDES THAT ARGUED THE GOVERNMENT INVENTED THE PHRASE "5-9 BRIMS OF MARLBORO" IN A "SNEAKY" EFFORT TO "TRAIN" THE JURY TO MAKE AN UNSUPPORTABLE ASSOCIATION BETWEEN THE CHARGED ENTERPRISE – THE "5-9 BRIMS" – AND THE BREADGANG, WHICH WAS NOT NAMED IN THE INDICTMENT.

### A. <u>Facts</u>.

To convict Pippins of murder in aid of racketeering, the government was required to prove that Pippins killed Sean Peart at least in part to maintain or increase his position in the 5-9 Brims. Substantial evidence, however, supported the conclusion that, if Pippins was loyal to any gang, it was not the 5-9 Brims but rather to the Breadgang — a partying and scamming gang founded by his murdered twin brother Melly. Although many of the Breadgang members were also members of the 5-9 Brims and, like many 5-9 Brims members lived in Brooklyn's Marlboro housing complex, the Breadgang had many members who were not 5-9 Brims and who, rather, were members of rival gangs. In fact, the government's own cooperating witness, Marcus Laborde, testified that the Breadgang **was not** part of the 5-9 Brims but rather was associated with the rival Folk Nation (Tr. 667-69). And the evidence further supported the conclusion

14

that Pippins' murdered brother Melly had been more associated with the Breadgang than with the 5-9 Brims.

In short, there was a powerful argument that the government had identified the wrong gang as the one to which Pippins was loyal, and which may, in part, have provided him a motive to kill Sean Peart. The government therefore needed to find ways to "train" the jury to associate the Breadgang with the 5-9 Brims, so if the jury determined that Pippins was motivated to kill Sean Peart by his — Pippins' — association with the Breadgang, it could nonetheless convict him.

As part of its effort to "train" the jury to associate the Breadgang with the 5-9 Brims, the government concocted the phrase "5-9 Brims from Marlboro" as a synonym for "Breadgang," thereby creating a semantical association between the 5-9 Brims and the Breadgang. Thus when it questioned its cooperators, Marcus Laborde and Khalif Watson, about the Breadgang, it did not use that gang's actual name but rather referred to the Breadgang as the "5-9 Brims from Marlboro," asking the witnesses questions such as:

- Q How is committing acts of violence like the shootings you just described looked at by the 5-9 Brims from Marlboro (349).

15

- Q Did people within the 5-9 Brims from Marlboro talk about crimes that other members of the gang committed? (350).

- Q Did people within the 5-9 Brims from Marlboro talk about crimes that other members of the gang committed? (350).

- Q I want to talk now about some of the other members of the 5-9 Brims from Marlboro. (392).

- Q Was he part of your group of 5-9 Brims from Marlboro? (411).

- Q Other members of 5-9 Brims from Marlboro? (424).

- Q Did she ever hang with members of 5-9 Brims from Marlboro? (450).

- Q Did other members of the 5-9 Brims from Marlboro go to her baby shower? (451).

- Q Did Melly's death have an impact on the 5-9 Brims from Marlboro?(513).

- Q Aside from Sdot and Melly's murder, do you know of any other shootings between the 5-9 Brims from Marlboro and Real Ryte? (537).

As cooperator Laborde testified, however, he had never heard the Breadgang referred to as the "5-9 Brims from Marlboro" until the government used that term. (Tr. 643: "Q. So, as a matter of fact, prior to this case, had you ever used [the] term 5-9 Brims of Marlboro to refer to Bread Gang? A. No. Q. That's not your term; right? A. No. Q. That's Government's term? A. Correct.")

16

Given what defense counsel considered the government's devious use of the made-up phrase "5-9 Brims from Marlboro" counsel criticized its use during summation as a "sneaky" effort to "train" the jury to associate the Breadgang with the 5-9 Brims. The government objected to counsel's argument and related slides. The court agreed, criticizing defense counsel in the jury's presence, saying, "the titling of this is inappropriate. I'm telling the jury that. I reject your notion that you are going to argue in any way that the government is 'training the jury.' That's not an appropriate argument." (Tr. 1919-20). Outside the presence of the jury, the court continued, "Do not impugn the integrity of the government as if they're trying to pull a fast one. … I'm not allowing you to make that argument to impugn or attack the government." (Tr. 1921); *id.* at 1922 ("Talk about the evidence but do not impugn the motive of the government."); *id.* at 1924 ("I understand but I don't want you to make that point, to attack the government as if they're trying to fool the jury or manipulate them or somehow sending them into a trance of some kind that they just accept this characterization. Argue the evidence but do not impugn the government based on how they phrased a simple preposition.") The court then required counsel to take a 20-minute break

17

to purge his argument and slides of any criticism of the government. (1925-26). Counsel did as he was told.

## B. The Panel Decision

On appeal, the panel concluded:

Though lawyers are sometimes given leeway, erroneously or not, to make somewhat inflammatory comments about opposing counsel, the Supreme Court has instructed district courts not to allow such mudslinging. *United States v. Young*, 470 U.S. 1, 9 (1985) ("Defense counsel, like [the government], must not be permitted to make unfounded and inflammatory attacks on the opposing advocate."). The court acted within its discretion in prohibiting Pippins from accusing the government of "training" the jury.

*United States v. Pippins*, 2026 WL 277682, at *3 (2d Cir. Feb. 3, 2026).

## C. Discussion.

The panel's decision was erroneous, since both this Court and numerous other circuit courts of appeal routinely affirm the government's strident attacks on defense counsel during summation, often made during rebuttal summation when defense counsel can't respond. The case law permits the government to argue in summation that defense counsel's summation arguments were "smoke and mirrors" (*Rodriguez v. Morris*, No. CV-19-04957-PHX-GMS, at *17-18 (D. Ariz. May 17, 2021)); or that defense counsel was lacking "common decency" and "'made up' testimony" (*United States v. Salameh*, 152 F.3d 88, 138

18

(2d Cir. 1998)); or that "the defense is attempting to trick the jury" (*United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)); or that the defense theories were "nonsense" and that the defense's opening statement "attempt[ed] to manipulate you, to play on our emotions, and to distract you from what this case is actually about" (*United States v. Fox*, 761 F. App'x 765, 768 (9th Cir. 2019) ("Criticism of defense theories and tactics is a proper subject of closing argument.") (citations omitted)); or that the defense case "was a total sideshow." *United States v. Rainford*, 110 F.4th 455, 474 (2d Cir. 2024).

"[S]uch comments are usually not improper because the prosecution 'necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Davis v. Napel*, No. 2:14-cv-10019, at *22-23 (E.D. Mich. Feb. 29, 2016), quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009); *see also Salameh*, 152 F.3d at 139, *supra* ("Attorney Campriello also remarked that the weakness of the government's evidence required the prosecutors to 'do a little slipping and sliding, a little bobbing, weaving, a little zigging and zaggin[g] as the case developed.' In light of Attorney Campriello's criticisms, the government was entitled to respond with similar language in rebuttal."). And it is

19

therefore "permissible for the prosecution to comment on defense strategy during closing. *Slagle v. Bagley*, 457 F.3d 501, 522 (6th Cir. 2006). "Moreover, a prosecutor is not required to use the most benign terminology or avoid reasonable descriptions of the events in question. One of the purposes of the closing argument is to persuade the jury not to buy into the opposing party's theory of his case." *Robertson v. Simpson*, No. 5:05CV-239-R, 2011 WL 3880940, at *14 (W.D. Ky. Sept. 2, 2011) (cleaned up, emphasis added).

This Court in particular has countenanced a broad range of hard-hitting rhetorical flourishes, even during the government's rebuttal summation. *See e.g.*, *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) (government's reference to the "misrepresentations and sheer inventions" of defense counsel was appropriate response since defense counsel made several statements during summation which led the judge to reprimand him for statements which compared the government's investigatory tactics to "Hitler's Germany"); *United States v. Praetorius*, 622 F.2d 1054, 1060-61 (2d Cir. 1979) (holding that defense counsel's accusations of a "frame up" or attempt to "dupe" the jury, "rendered quite proper the relatively mild response of the Assistant United States

20

Attorney" in criticizing the defense counsel's attacks on the integrity of the government's case and the good faith of the government's agents, witnesses, and prosecutorial staff). In *United States v. Marrale*, 695 F.2d 658, 667 (2d Cir. 1982), this Court stated that the prosecution's comments in direct response to defense counsel's arguments were provoked by a "permissible desire to dispute defense histrionics."

Thus there is a long history of permitting the government to sharply criticize defense counsel for what it perceives to be questionable defense practices. *United States v. Young*, 470 U.S. 1 (1985), cited by the panel, is inapposite. There, defense counsel intimated that the prosecution deliberately withheld exculpatory evidence, and pointed directly at the prosecutor's table stating, "I submit to you that there's not a person in this courtroom including those sitting at this table who think that Billy Young intended to defraud" the alleged victim. Counsel also argued that defendant had been "the only one in this whole affair that has acted with honor and with integrity" and told the jury "[t]hese complex [Department of Energy] regulations should not have any place in an effort to put someone away." In the instant case, defense counsel did nothing analogous, but instead rightly criticized the government for its

21

substitution of a totally fabricated synonym for Breadgang to train the jury to associate the Breadgang with the 5-9 Brims.

The error was not harmless. Courts permit such focused argument because "One of the purposes of the closing argument is to persuade the jury not to buy into the opposing party's theory of his case." *Robertson v. Simpson*, No. 5:05CV-239-R,2011 WL 3880940, at *14 (W.D. Ky. Sept. 2, 2011) (cleaned up, emphasis added). That is precisely what Pippins' counsel was endeavoring to do: persuade the jury to reject the government's arguments that Pippins was a loyal member of the 5-9 Brims who acted in concert with that enterprise to commit the charged enterprise-related offenses. If the jury agreed the government was using sneaky tactics to train the jurors by using the term "5-9 Brims of Marlboro," counsel hoped the jury would thereby question other of its arguments as well. The court's order foreclosed such argument by counsel, relegating him to arguments that merely pointed out the government's use of that phrase without the power of argument that the government was being sneaky and couldn't be trusted.

Additionally, the district court's actions interrupted counsel during a critical part of his argument, causing a lengthy hiatus while counsel

22

obeyed the court's order to sanitize his slides and argument. The court also disparaged counsel in front of the jury, telling the jurors that counsel's slide using the term "sneaky" was "inappropriate" and instructing the jury to "disregard this slide title and any suggestion somehow that the Government has done anything improper or is any way trying to train you." (Tr. 1919). What began, therefore, as proper criticism of the government, ended with unfair criticism of defense counsel.

The district court's rulings worked an obvious unfairness on Pippins. It also provides good cause for this Court to clarify whether there are two sets of rules at play during summation — one for the government, where anything goes, and the other for the defense, which may not so much as criticize the government.

## Conclusion

Learned Hand's warning, quoted at the beginning of his brief, resonates here. The district court wrongly instructed the jury on an essential element of the § 1959 counts, refused a closely related and legally correct theory-of-defense instruction that embodies rules this Court has repeatedly approved, and curtailed defense counsel's summation for criticizing the government — conduct that cannot be

23

reconciled with this Court's enumerable precedents approving the government's sharp criticisms of defense counsel.

Mr. Pippins stands convicted of being a gang member who committed murder, and the seriousness of the allegations understandably heightens the impulse to deny these errors or to declare them harmless. But the legitimacy of the criminal process turns on whether the rules are applied most rigorously in the hardest cases, not the easiest ones. Allowing these errors to stand would signal that the guardrails in place to assure fairness in criminal prosecutions yield in cases involving violent crime. That is not the law of this Circuit, and it is not consistent with the principle Judge Hand described. Rehearing en banc should be granted.

Dated: New York, New York
      February 13, 2026

Respectfully submitted,

Richard Levitt
Zachary Segal
LEVITT & KAIZER
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 480-4000
*Attorneys for Marvin Pippins.*

24